## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. CARL GIESLER, JR., | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No.   CIV-21-904-HE |
| | § | |
| 1. SANDRIDGE ENERGY, INC., | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT

Plaintiff Carl Giesler, Jr. ("Giesler") files his Complaint against Defendant SandRidge Energy, Inc. ("SandRidge") and alleges as follows:

## PARTIES

1.    Giesler is a citizen of and resides in Texas.

2.    SandRidge is a Delaware corporation with its principal place of business in Oklahoma City, Oklahoma.  SandRidge can be served with process through its registered agent, The Corporation Company, 1833 S. Morgan Road, Oklahoma City, OK  73128.

## JURISDICTION AND VENUE

3.    The Court has subject matter jurisdiction because (a) the matter in controversy exceeds the value of $75,000, exclusive of interest and costs; and (b) the parties are citizens of different states. 28 U.S.C. §1332(a).

4.    The Court has personal jurisdiction over SandRidge. SandRidge is an Oklahoma citizen.   SandRidge contractually consented to personal jurisdiction in Oklahoma City and contractually waived any right to contest such personal jurisdiction.

SandRidge continuously and systematically operates from its headquarters in Oklahoma City, Oklahoma.

5.     This is the proper venue for this action. SandRidge contractually agreed to this venue and waived any right to contest such venue.

## STATEMENT OF FACTS

6.     On or about April 6, 2000, SandRidge entered into a written employment contract ("Employment Contract") with Giesler.  By its terms, the Employment Contract is governed by Oklahoma law.

7.     Giesler and SandRidge negotiated the Employment Contract's terms. They tailored the Employment Contract's terms to their circumstances. They documented their express intentions and agreements in the Employment Agreement.  SandRidge, a sophisticated party represented by counsel in the transaction, intentionally included and agreed to the provisions that appear in the Employment Contract it executed.  The Employment Contract's terms are clear.

8.     Giesler and SandRidge agreed in the Employment Contract that it "preempts in all respects any prior understandings, agreements or representations by or between the parties, written or oral, which may have related in any manner to the subject matter hereof."

9.     Giesler and SandRidge further agreed in the Employment Contract that "[i]n the event of any inconsistency between the provisions of this Agreement and any other plan, program, practice or agreement in which Executive is a participant or a party, this Agreement [*i.e.*, the Employment Contract] shall control."

2

10.     In the Employment Contract, Giesler agreed to serve as SandRidge's Chief Executive Officer. He did so in exchange for a defined compensation package, part of which consisted of a deferred future compensation in the event his employment terminated for "any reason other than Cause."  The exact amount of such deferred future compensation to which Geisler was entitled depended on the date of his employment's termination, per a contractual formula.

11.     Giesler performed the Employment Contract.  SandRidge failed to do the same.

12.     As further detailed below, in short, Sandridge represented and agreed in the Employment Contract that if Giesler's "employment is terminated" on July 16, 2021 "for any reason other than Cause," then an additional 284,323 Restricted Stock Units ("RSUs") "shall be vested" and distributed to Giesler.  Giesler's employment undisputedly terminated on July 16, 2021 for a reason other than Cause, but SandRidge has failed to distribute to Giesler the additional 284,323 RSUs that vested when his employment terminated.

13.     The plain language of the Employment Contract, in Section 5, begins in relevant part:

> *[I]f Executive's employment is terminated* after the Compensation Date but before the third Vest Date, (x) *for any reason other than Cause* (as defined in the Incentive Plan), *an additional portion of the unvested Initial RSU Grant shall be vested . . . .*

14.     It is undisputed that "[Giesler's] employment is terminated."  Giesler terminated his employment with SandRidge on July 16, 2021.

15.     It is undisputed that Giesler's employment terminated "after the Compensation Date" of June 15, 2020 but "before the third Vest Date" of April 6, 2023.

16.     It is undisputed that Giesler's employment with SandRidge terminated for "any reason other than Cause (as defined in the Incentive Plan [2016 Omnibus Incentive Plan (as Amended and Restated as of Aug. 8, 2018)]))."[1]  SandRidge did not terminate Giesler's employment at all, much less for Cause.  Nor did Giesler resign due to Cause.  Giesler voluntarily resigned, as SandRidge has publicly and contemporaneously acknowledged, "to pursue another career opportunity."  SandRidge also publicly and contemporaneously acknowledged that Giesler's employment termination was not "the result of any disagreement with [SandRidge]" and not "the result of . . . any matter relating to [SandRidge's] operations."

17.     Under these circumstances, the Employment Contract formula provided that:

> . . . . an additional portion of the unvested Initial RSU grant shall be vested equal to the product of the number of the Initial RSU grant shares that are not vested as of Executive's employment termination, multiplied by a fraction, the numerator of which is the number of days between the Effective Date and the date of Executive's employment termination, and the denominator of which is 1095 . . . .

---

[1] Cause, "as defined in the Incentive Plan," required "(i) willful and continued failure to perform Participant's duties with the Company; (ii) willful and continued failure to follow and comply with the written policies of the Company as in effect from time to time; (iii) willful commission of an act of fraud or dishonesty resulting in economic or financial injury to the Company; (iv) willful engagement in illegal conduct or gross misconduct; (v) willful breach of any agreement with the Company or an Affiliate; or (vi) indictment for, conviction of, or a plea of guilty or nolo contendere to any felony or other crime involving moral turpitude."

18.     The "number of the Initial RSU Grant shares that [were] not vested as of [Giesler's] employment termination" was 666,666.

19.     The Employment Contract defined its Effective Date to be April 6, 2020. Thus, the "number of days between the Effective Date and the date of [Giesler's] employment termination" on July 16, 2021 was 467.

20.     Applying these inputs into the Employment Contract formula, the Employment Contract provides that Giesler was entitled to receive at his employment's termination the additional 284,323 RSUs, or 666,666 x (467/1095) RSUs, which vested upon that termination.

21.     Giesler made a written demand for the unpaid vested RSUs. SandRidge has refused to comply with the Employment Contract, thus necessitating this action.

## CAUSE OF ACTION

### A.     Breach of Contract

22.     Giesler incorporates by reference all prior paragraphs, as if fully set forth herein.

23.     Giesler and SandRidge formed and entered into an enforceable contract, the Employment Contract, that includes the SandRidge obligations set forth above.

24.     SandRidge breached the Employment Contract by failing to pay Giesler the 284,323 RSUs vested thereunder.

25.     As a direct and proximate result of SandRidge's breach of the Employment Contract, Giesler has suffered an injury.

## PRAYER

For these reasons, Giesler requests that the Court enter judgment in his favor and against SandRidge.  As part of this judgment, Giesler requests that the Court award him:

(i)     the 284,323 RSUs;

(ii)    actual, direct, indirect, incidental, and consequential damages;

(iii)   reasonable attorneys' fees, expenses, court fees, and associated costs; and

(iv)    all other and further relief to which he may be entitled.

JURY TRIAL DEMANDED.

Date: September 15, 2021.

Respectfully submitted,

*s/Phillip G. Whaley*
Phillip G. Whaley, OBA No. 13371
**RYAN WHALEY**
400 North Walnut Avenue
Oklahoma City, OK  73104
Telephone:  (405) 239-6040
Facsimile:  (405) 239-6766
pwhaley@ryanwhaley.com

**REYNOLDS FRIZZELL LLP**

Jean C. Frizzell (*pro hac vice pending*)
Texas State Bar No. 07484650
Brandon T. Allen (*pro hac vice pending*)
Texas State Bar No. 24009353
1100 Louisiana, Suite 3500
Houston, Texas 77002
Telephone: (713) 485-7200
Facsimile: (713) 485-7250
jfrizzell@reynoldsfrizzell.com
ballen@reynoldsfrizzell.com

**ATTORNEYS FOR PLAINTIFF**