IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CARL GIESLER, JR. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 21-CV-00904-HE |
| | ) |
| SANDRIDGE ENERGY, INC. | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S ANSWER TO DEFENDANT'S COUNTERCLAIM**

Pursuant to the Federal Rules of Civil Procedure, Plaintiff Carl Giesler, Jr. ("Giesler"), by and through his counsel, responds as follows to the allegations set forth in the Counterclaim filed by Defendant SandRidge Energy, Inc. ("SandRidge") dated November 24, 2021 (the "Counterclaim"). The numbered paragraphs below correspond to the numbered paragraphs in SandRidge's Counterclaim.

1. Giesler admits SandRidge hired Giesler as President and CEO on or about April 6, 2020 pursuant to a written employment contract (the "Employment Contract"). Giesler admits the Employment Contract included a Long-Term Incentive Award (as defined by the Employment Contract) negotiated and agreed upon by the parties. Giesler admits his employment with SandRidge terminated effective July 16, 2021. Giesler otherwise denies SandRidge's allegations in this paragraph.

2. Giesler admits the Employment Contract obligated SandRidge to pay Giesler an annual salary of three hundred and fifty thousand dollars ($350,000) and

provided for a "target bonus" of fifty percent of his annual salary. Giesler admits the Employment Contract awarded Giesler, as of April 6, 2020, one million Restricted Stock Units ("RSUs"). Giesler admits one-third of the RSUs automatically vested on the one-year anniversary of the Employment Contract. Giesler admits the Employment Contract provided that the remaining RSUs would vest in two additional, equal installments on the second and third anniversaries of the Employment Contract. Giesler otherwise denies SandRidge's allegations in this paragraph.

3. Giesler admits he filed a lawsuit to enforce the Employment Contract. Giesler admits he is entitled to the RSUs for which the Employment Contract formula provides in the event his "employment is terminated after the Compensation Date but before the third Vesting Date . . . for any reason other than Cause (as defined in the Incentive Plan)." Giesler otherwise denies SandRidge's allegations in this paragraph.

4. Giesler denies SandRidge's allegations in this paragraph.

5. Giesler admits that, among other things, the terms of the Employment Contract entitle Giesler to 284,323 additional RSUs, in addition to the other compensation provided by the Employment Contract. Giesler otherwise denies SandRidge's allegations in this paragraph.

6. Giesler admits SandRidge Energy, Inc. is a Delaware Corporation with its headquarters located in Oklahoma City, Oklahoma. Giesler admits SandRidge is a

publicly traded company listed on the New York Stock Exchange with the Stock Ticker Symbol "SD."

7. Giesler admits he is a citizen and resident of the state of Texas.

8. Giesler admits this Court has subject matter jurisdiction because the amount in controversy exceeds the value of $75,000 and the Parties are citizens of different states, pursuant to 28 U.S.C. § 1332(a).

9. Giesler admits this Court has personal jurisdiction over the parties because they contractually consented to personal jurisdiction in this Court and waived the right to contest personal jurisdiction.

10. Giesler admits venue is proper in this Court.

11. Giesler admits he joined SandRidge as President and Chief Executive Officer in April 2020, following his tenure at Jones Energy, Inc.  Giesler admits Jones Energy, Inc. had filed for Chapter 11 bankruptcy. Giesler otherwise denies SandRidge's allegations in this paragraph.

12. Giesler admits that he is an experienced executive and a graduate of Harvard Law School. Giesler admits that part of his management plan for SandRidge was to "right-size" and grow the value of the company through cost reduction, process improvements, debt reduction and cash flow maximization. Giesler otherwise denies SandRidge's allegations in this paragraph.

13. Giesler admits the parties negotiated the Employment Contract, including its Long-Term Incentive Award provisions. Giesler admits the parties' agreement after

those negotiations was memorialized in the Employment Contract. Giesler otherwise denies SandRidge's allegations in this paragraph.

14.     Giesler admits the Employment Contract awarded Giesler, as of April 6, 2020, 1,000,000 RSUs, which would be settled in shares of SandRidge's common stock upon vesting and "vest in three equal installments on each of the first, second, and third anniversaries of the" Employment Contract.  Giesler admits the Employment Contract provides that, "if Executive's employment is terminated after the Compensation Date but before the third Vesting Date . . . for any reason other than Cause (as defined in the Incentive Plan), an additional portion of the unvested Initial RSU Grant shall be vested," in an amount set forth in the Employment Contract's formula. Giesler admits the Employment Contract provides that "if Executive's employment is terminated after the Compensation Date but before the third Vesting Date . . . for Cause, Executive shall forfeit all of the Initial RSU Grant, including any vested portion." Giesler admits the word "resignation" does not appear in the Employment Contract. Giesler otherwise denies SandRidge's allegations in this paragraph.

15.     Giesler denies SandRidge's allegations in this paragraph.

16.     Giesler admits the Employment Agreement provides that the Initial RSU Grant is "subject to the terms and conditions of the Incentive Plan" and that "notwithstanding" that provision, "if Executive's employment is terminated after the Compensation Date but before the third Vesting Date . . . for any reason other than Cause (as defined in the Incentive Plan), an additional portion of the unvested Initial RSU Grant

shall be vested," in an amount set forth in the Employment Contract's formula. Giesler admits the Incentive Plan is set forth in a separate document. Giesler admits the Incentive Plan states in paragraph 3.3, in part, that SandRidge's Compensation Committee has the "authority . . . to construe and interpret the terms and provisions of the Plan and any Award issued under the Plan (and any Award Agreements relating thereto,)" but that "[n]otwithstanding the foregoing, no action of the Committee under this Section 3.3 shall impair the rights of [Giesler] without [Giesler's] consent." Giesler admits, upon information and belief, that after receiving Giesler's demand for compliance with the terms of the written Employment Contract, the SandRidge Compensation Committee claimed it had the power to retroactively alter the terms of the Employment Contract without Giesler's consent and impair Giesler's rights under the Employment Contract without Giesler's consent. Giesler otherwise denies SandRidge's allegations in this paragraph.

17. Giesler admits that, since its execution by the parties, he has held the belief that the Employment Contract the parties negotiated and documented means what its terms plainly state. Giesler admits that the Form 8-K filed by SandRidge on April 7, 2020 revealed the plain meaning of this Employment Contract to its Board and shareholders. Giesler otherwise denies SandRidge's allegations in this paragraph.

18. Giesler admits that he first notified SandRidge's Chairman of the Board of his potential intention to resign in or around the first week of July 2021. Giesler admits

the termination of his employment with SandRidge became effective on July 16, 2021. Giesler otherwise denies SandRidge's allegations in this paragraph.

19. Giesler denies SandRidge's allegations in this paragraph.

20. Giesler denies SandRidge's allegations in this paragraph.

21. Giesler denies SandRidge's allegations in this paragraph.

22. Giesler denies SandRidge's allegations in this paragraph.

23. Giesler admits that his employment with SandRidge terminated effective July 16, 2021 and that he accepted a job as the Chief Financial Officer of Southwestern Energy Company ("Southwestern"). Giesler admits that Southwestern has publicly acknowledged in an SEC filing that Southwestern compensated Giesler for RSUs that, per the Employment Contract formula, Giesler forfeited by no longer remaining at SandRidge, none of which Giesler seeks in this lawsuit. Giesler otherwise denies SandRidge's allegations in this paragraph.

24. Giesler admits that, on July 15, 2021, Southwestern filed a Form 8-K disclosing Giesler's compensation. Giesler admits Southwestern stated, in part, that "[t]o compensate [Giesler] in part for long-term incentives forfeited upon his resignation from his current position, he will receive a one-time cash bonus in the amount of $500,000 payable upon the one-year anniversary of the commencement of his employment and a one-time grant of 130,675 shares of common stock of the Company, which will ratably vest annually over three years." Giesler admits that Southwestern publicly acknowledged that it compensated Giesler for RSUs that, per the Employment Contract formula, Giesler

forfeited by no longer remaining at SandRidge, none of which Giesler seeks in this lawsuit. Giesler otherwise denies SandRidge's allegations in this paragraph.

25. Giesler denies SandRidge's allegations in this paragraph.

26. Giesler incorporates by reference his prior responses.

27. Giesler denies SandRidge's allegations in this paragraph.

28. Giesler denies SandRidge's allegations in this paragraph.

29. Giesler denies SandRidge's allegations in this paragraph.

30. Giesler denies SandRidge's allegations in this paragraph.

31. Giesler denies SandRidge's allegations in this paragraph.

32. Giesler denies SandRidge's allegations in this paragraph.

33. Giesler denies SandRidge's allegations in this paragraph.

34. Giesler admits the Employment Contract's terms concerning the Initial RSU Grant, the vesting schedule, and the Long-Term Incentive Award, among others, are material terms of the Employment Contract. Giesler otherwise denies SandRidge's allegations in this paragraph.

35. Giesler denies SandRidge's allegations in this paragraph.

36. Giesler denies SandRidge's allegations in this paragraph.

37. Giesler denies SandRidge's allegations in this paragraph.

38. Giesler denies SandRidge is entitled to any of the relief it states in its Prayer.

Respectfully submitted,

*s/Phillip G. Whaley*
Phillip G. Whaley, OBA No. 13371
**RYAN WHALEY**
400 North Walnut Avenue
Oklahoma City, OK 73104
Telephone: (405) 239-6040
Facsimile: (405) 239-6766
Email: pwhaley@ryanwhaley.com

Brandon T. Allen (admitted *pro hac vice*)
Jean C. Frizzell (admitted *pro hac vice*)
**REYNOLDS FRIZZELL LLP**
1100 Louisiana Street, Suite 3500
Houston, TX 77002
Telephone: (713) 485-7200
Facsimile: (713) 485-7250
Email: allen@reynoldsfrizzell.com
Email: jfrizzell@reynoldsfrizzell.com

***ATTORNEYS FOR PLAINTIFF CARL GIESLER, JR.***

## CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2021, I electronically transmitted the attached document to the Clerk of Court using the Electronic Filing System for filing. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

*s/Phillip G. Whaley*
Phillip G. Whaley