# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C. 20549**

## FORM 8-K

**CURRENT REPORT**
**Pursuant to Section 13 or 15(d)**
**of the Securities Exchange Act of 1934**

**Date of Report (Date of earliest event reported): April 6, 2020**

# SANDRIDGE ENERGY, INC.
**(Exact name of registrant as specified in its charter)**

| Delaware | 1-33784 | 20-8084793 |
|---|---|---|
| (State or Other Jurisdiction of Incorporation or Organization) | (Commission File Number) | (I.R.S. Employer Identification No.) |

| 123 Robert S. Kerr Avenue Oklahoma City, Oklahoma | 73102 |
|---|---|
| (Address of Principal Executive Offices) | (Zip Code) |

**Registrant's Telephone Number, including Area Code: (405) 429-5500**

**Not Applicable.**
**(Former name or former address, if changed since last report)**

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Trading Symbol | Name of each exchange on which registered |
|---|---|---|
| Common Stock, $0.001 par value | SD | New York Stock Exchange |

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (see General Instructions A.2. below):

☐ Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐ Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐ Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐ Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

Indicate by check mark whether the registrant is an emerging growth company as defined in Rule 405 of the Securities Act of 1933 (§230.405 of this chapter) or Rule 12b-2 of the Securities Exchange Act of 1934 (§240.12b-2 of this chapter).

Emerging growth company ☐

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant Section 13(a) of the Exchange Act. ☐

**Item 5.02 Departure of Directors or Certain Officers; Election of Directors; Appointment of Certain Officers.**

Effective April 6, 2020, the Board of Directors (the "Board") of SandRidge Energy, Inc. (the "Company") appointed Carl F. Giesler, Jr. as the Company's President and Chief Executive Officer. Mr. John P. Suter who served as the Company's Interim President and Chief Executive Officer since December 12, 2019 will continue in the role he held previously, Executive Vice President and Chief Operating Officer.

Mr. Giesler, age 48, most recently served as the Chief Executive Officer and a Director of Jones Energy, Inc. from July 20, 2018 until January of 2020. Mr. Giesler previously served as the Chief Executive Officer and a Director of Glacier Oil & Gas Corp ("Glacier") and its predecessor companies since September 2014. Immediately prior to joining Glacier, Mr. Giesler served as a Managing Director with Harbinger Group Inc. where he led its oil & gas investment efforts since October 2011. Prior to joining Harbinger Group Inc., Mr. Giesler served in various oil & gas principal investing, financial and other roles with Harbinger Capital Partners, AIG FP, Morgan Stanley and Bain & Company. In addition to serving as a Director of Glacier and its predecessor companies, Mr. Giesler has also served on the boards of Compass Production Partners, LP (private) and North American Energy Partners, Inc. (public). Mr. Giesler received his Bachelor of Arts from the University of Virginia and his Juris Doctorate from Harvard Law School. He is also a CFA Charterholder.

Mr. Giesler has no family relationships with any current director, director nominee, or executive officer of the Company, and there are no transactions or proposed transactions, to which the Company is a party, or intended to be a party, in which Mr. Giesler has, or will have, a material interest subject to disclosure under Item 404(a) of Regulation S-K. Mr. Giesler was not appointed as the Company's President and Chief Executive Officer pursuant to any arrangement or understanding with any other person.

The Company and Mr. Giesler have entered into an offer letter (the "Offer Letter"), pursuant to which Mr. Giesler will receive an annual base salary of $350,000 per annum beginning June 15, 2020. He is eligible to participate in the Company's Annual Incentive Plan, and his target cash bonus will be 50% of his annual base salary. The Offer Letter also provides that Mr. Giesler will receive an award of 1,000,000 restricted stock units under the 2016 Omnibus Incentive Plan (as amended and restated as of August 8, 2018, the "Incentive Plan"). The restricted stock grant will be subject to the terms and conditions of the Incentive Plan and will vest in three equal annual installments subject to special vesting provisions in the event of a termination or change in control. Mr. Giesler will also be entitled to participate in the retirement, welfare, incentive, fringe and perquisite programs generally made available to executive officers of the Company.

The foregoing summary does not purport to be complete and is qualified in its entirety by reference to the complete copy of the Offer Letter, which is filed herewith as Exhibit 10.1.

**Item 7.01 Regulation FD Disclosure.**

On April 7, 2020, the Company issued a press release announcing the appointment of Mr. Giesler as President and Chief Executive officer, the actions the Company has taken in response to coronavirus pandemic and associated market volatility, and the withdrawal of the Company's previously announced guidance for fiscal year 2020. A copy of the press release is furnished as Exhibit 99.1 to this Current Report on Form 8-K.

**Item 9.01. Financial Statements and Exhibits**

  Exhibit 10.1      Offer Letter

  Exhibit 99.1      SandRidge Energy, Inc. press release dated April 7, 2020

## SIGNATURE

Pursuant to the requirements of the Securities Exchange Act of 1934, the Registrant has duly caused this report to be signed on its behalf by the undersigned thereunto duly authorized.

**SANDRIDGE ENERGY, INC.**
(Registrant)

Date: April 7, 2020          By:   /s/ Michael A. Johnson
                                    Michael A. Johnson
                                    Senior Vice President and Chief Financial Officer



April 6, 2020

Mr. Carl F. Giesler, Jr.
3012 Reba Dr.
Houston, Texas 77019

Dear Carl:

On behalf of the Board of Directors of SandRidge Energy, Inc. (the "Board"), I am pleased to offer you ("Executive") employment in the position of Chief Executive Officer of SandRidge Energy, Inc. ("Corporation") from and after April 6, 2020 (the "Effective Date").

1. <u>Agreement</u>. This letter agreement (the "Agreement") describes the terms and conditions of Executive's employment and supersedes and preempts in all respects any prior understandings, agreements or representations by or between the parties, written or oral, which may have related in any manner to the subject matter hereof. In the event of any inconsistency between the provisions of this Agreement and any other plan, program, practice or agreement in which Executive is a participant or a party, this Agreement shall control. On the Effective Date, Executive shall become an "at will" employee as defined under Oklahoma state law.

2. <u>Position</u>. Executive will serve as Chief Executive Officer of the Corporation, reporting directly to the Corporation's Board of Directors (the "Board"). In addition, the Corporation shall cause Executive to be nominated to stand for election to the Board. If Executive's employment is terminated for any reason, he shall be deemed to resign from the Board and the board of directors of any affiliate of the Corporation to which he has been appointed or nominated by or on behalf of the Corporation.

3. <u>Base Salary</u>. Beginning June 15, 2020 (the "Compensation Date"), Executive's annual base salary will be $350,000 per annum (the "Base Salary"), less applicable taxes, payable in accordance with the Corporation's normal payroll practices as in effect from time to time. From the Effective Date until the Compensation Date, Executive will receive no compensation from the Corporation, other than as described below.

4. <u>Annual Bonus</u>. Executive will participate in the Corporation's Annual Incentive Plan ("AIP") (or any successor bonus plan) and Executive's target bonus amount will be 50% of Executive's annual base salary (the "Target Bonus"), determined in the sole discretion of the Board. Executive's annual bonus target will be reviewed periodically by the Board and the Compensation Committee, with any modifications at the sole discretion of the Board. Executive's annual bonus will be subject to the terms and conditions contained in the AIP.

5. <u>Long-Term Incentive Award</u>. Effective as of the Effective Date, you will receive an award of 1,000,000 Restricted Stock Units (the "Initial RSU Grant") under the 2016 Omnibus Incentive Plan (As Amended and Restated as of August 8, 2018) (the "Incentive

Mr. Carl F. Geiser
April 6, 2020
Page 2

Plan"). This Initial RSU Grant will be subject to the terms and conditions of the Incentive Plan, and will (i) be settled in shares of the Corporation's common stock upon vesting, and (ii) vest in three equal installments on each of the first, second, and third anniversaries of the Effective Date (the "Vesting Dates"). Notwithstanding the preceding sentence, if Executive's employment is terminated for any reason before the Compensation Date, Executive shall forfeit all of the Initial RSU Grant, and if Executive's employment is terminated after the Compensation Date but before the third Vesting Date, (x) for any reason other than Cause (as defined in the Incentive Plan), an additional portion of the unvested Initial RSU Grant shall be vested, equal to the product of the number of the Initial RSU Grant shares that are not vested as of Executive's employment termination, multiplied by a fraction, the numerator of which is the number of days between the Effective Date and the date of Executive's employment termination, and the denominator of which is 1095, and (y) for Cause, Executive shall forfeit all of the Initial RSU Grant, including any vested portion. Upon a Change in Control (as defined in the Incentive Plan) the Initial RSU Grant shall vest in full and, if Executive's employment is terminated for any reason other than Cause (as defined in the Incentive Plan) either during (x) the 12 months immediately following or (y) the three months immediately preceding the Change in Control, Executive shall receive a lump sum payment equal to 1 times the sum of the Base Salary and the Target Bonus, which would be in lieu of any payments or benefits under the Corporation's Special Severance Plan and any other plan or program providing severance.

6. <u>Benefit Programs</u>. During Executive's employment, Executive will be eligible to participate in the retirement, welfare, incentive, fringe and perquisite programs generally made available to executive officers of the Corporation, including the Corporation's Paid Time Off Policy, in accordance with the terms and conditions of the applicable plan or policy. Except as described in Section 5 above, beginning on the Compensation Date, Executive will be eligible to participate in the corporation's Special Severance Plan, in accordance with its terms and conditions. The Corporation reserves the right to change the benefit programs at any time.

7. <u>Business Expenses</u>. Upon presentation of reasonable substantiation and documentation as the Corporation may specify from time to time, the Employee shall be reimbursed in accordance with the Corporation's expense reimbursement policy, for all reasonable out-of-pocket business expenses, including but not limited to reasonable commuting expenses between Executive's residence in Houston, Texas and the Corporation's offices Oklahoma City, Oklahoma, including hotel or other temporary housing, incurred and paid by Executive, as well as reasonable legal expenses incurred and paid by Executive related to this Agreement, not to exceed $5,000.

8. <u>Restrictive Covenants</u>. As a condition to employment with the Corporation, Executive will be required to sign a restrictive covenant agreement in a form satisfactory to the Corporation, which shall include confidentiality and non-disclosure obligations, non-competition, and employee and customer non-solicitation restrictions ("Restrictive Covenant Agreement"). The Restrictive Covenant Agreement will last during the Employee's employment and, if terminated after the Compensation Date, for a further 6

months. Furthermore, Executive agrees not to disparage, or encourage or induce others to disparage, Carl Icahn and his family, the Corporation and its affiliates, related, parent, and subsidiary companies, and each of their officers, directors, employees, and clients (the "Released Parties"), with any third party, including, but not limited to, newspapers, authors, publicists, journalists, bloggers, gossip columnists, producers, directors, media personalities, and the like. For purposes of this Agreement, the term "disparage" includes, without limitation, comments or statements on the internet, to the press and/or media, to any Released Party or to any individual or entity with whom any of the Released Parties have a business relationship which would adversely affect in any manner (i) the conduct of the business of any of the Released Parties (including, without limitation, any business plans or prospects) or (ii) the business reputation of any the Released Parties.

9. <u>Withholding</u>. The Corporation may withhold from any amounts payable under this Agreement all taxes that the Corporation reasonably determines to be required to be withheld pursuant to any law, regulation, or ruling. However, it is Executive's obligation to pay all required taxes on any amounts paid under this Agreement, regardless of the extent to which amounts are withheld.

10. <u>Governing Law</u>. To the extent not preempted by federal law, the provisions of this Agreement shall be construed and enforced in accordance with the laws of the State of Oklahoma, excluding any conflicts or choice of law rule or principle that might otherwise refer construction or interpretation of this provision to the substantive law of another jurisdiction. Each party hereby agrees that Oklahoma City, Oklahoma is the proper venue for any litigation seeking to enforce any provision of this Agreement, and each party hereby waives any right it otherwise might have to defend, oppose, or object to, on the basis of jurisdiction, venue, or forum nonconveniens, a suit filed by the other party in any federal or state court in Oklahoma City, Oklahoma to enforce any provision of this Agreement.

Executive's execution of this letter will constitute a representation by Executive that he is not currently a party to any agreement that would inhibit Executive's ability to accept and perform the duties of the position being offered.

**SandRidge Energy Inc.**                                           **Agreed to and accepted by:**

By:   /S/Jonathan Frates                                              /S/Carl F. Giesler, Jr.
        Jonathan Frates                                                     Carl F. Giesler, Jr.
        Chairman of the Board



**SandRidge Energy Announces a Leadership Transition and Further Initiatives to Improve Shareholder Value**

Oklahoma City, Oklahoma, April 7, 2020 /PRNewswire/ – SandRidge Energy, Inc. ("SandRidge" or the "Company") (NYSE: SD) today announced new leadership as well as further initiatives to realize shareholder value.

The Company named Carl F. Giesler, Jr. as its President and Chief Executive Officer. Most recently, Mr. Giesler led the cost and operational turnaround and subsequent cash sale in January for Jones Energy, Inc. ("Jones Energy"). At Jones Energy, Mr. Giesler led a team that significantly right-sized that company's administrative and operating costs as well meaningfully improved its capital expenditure efficiency and effectiveness.

Commensurate with the new leadership appointment, the Company plans to implement several further significant initiatives to maximize free cash flow, reduce the Company's low debt level, preserve its strong balance sheet and liquidity position and, ultimately, to realize greater shareholder value.

- *Costs*. The Company will continue to right-size both its G&A and operating cost structure for the limited current growth environment given recent oil and gas market dynamics. Planned further actions, including salary and additional personnel reductions, will deepen the savings detailed on the Company's recent February earnings call.

- *Capital*. SandRidge will substantially further reduce its capital expenditures in 2020, limiting spend to that needed for safety or mechanical integrity and to low capex, quick payback, cash flow enhancing "small ball" workovers and other projects to extend the Company's production profile. The Company plans to defer any material drilling and completion activity until commodity prices and the corresponding economics for new wells improve.

- *Strategic Alternatives*. The Company will continue to evaluate the sale of non-cash flowing assets as well as other sale opportunities that deliver premium value to shareholders. It will also consider strategic combinations that bring cost economies, improve operating margins, extend its reserve life, lower its base production decline and grow its debt-adjusted cash flow per share.

Given the coronavirus pandemic and the associated market volatility and uncertain oil and gas market outlook, SandRidge feels it is appropriate to withdraw its 2020 guidance.

Jonathan Frates, Chairman of the Board, stated, "Given the ongoing headwinds in the oil and gas environment, we're committed to protecting our strong balance sheet and liquidity, and to maximizing the value of the enterprise for our shareholders. Key to both of those objectives is the further right-sizing of our cost structure, rationalizing our capital program and improving our capital efficiency. We believe that Carl, with his proven cost and operational turnaround experience at public oil and gas companies, is the right person to lead these initiatives."

**123 Robert S. Kerr Avenue, Oklahoma City, OK 73102 • Phone 405.429.5500, Fax 405.429.5977 • www.SandRidgeEnergy.com**

Mr. Frates added, "We appreciate John Suter's contributions to the Company during these challenging times and are appreciative that he has agreed to stay on as Chief Operating Officer and assist us in these efforts."

Prior to joining the Company, Mr. Giesler served as the Chief Executive Officer and a Director of Jones Energy Inc. from the summer of 2018 through its cash sale earlier this year. Prior to that, he served in the same roles at Glacier Oil and Gas and its predecessor company. Mr. Giesler has also served in various oil and gas principal investing and other roles with Harbinger Group, Inc., Harbinger Capital Partners, AIG FP and Morgan Stanley. Mr. Giesler received his BA from the University of Virginia and his JD from Harvard Law School. He is also a CFA Charterholder.

**About SandRidge Energy, Inc.**

SandRidge Energy, Inc. (NYSE: SD) is an oil and gas exploration and production company headquartered in Oklahoma City, Oklahoma with its principal focus on generating value through the development of its high potential oil and gas assets in Oklahoma and Colorado. The majority of the Company's production is generated from the Mississippian Lime formation in Oklahoma and Kansas.

For further information, please contact:

Johna Robinson
Investor Relations
SandRidge Energy, Inc.
123 Robert S. Kerr Avenue
Oklahoma City, OK 73102-6406
(405) 429-5515

**Cautionary Statement Regarding Forward-Looking Statements**

This communication may contain certain "forward-looking statements" under applicable securities laws, including the Private Securities Litigation Reform Act of 1995. These statements are typically identified by words or phrases such as "may," "will," "could," "should," "predict," "potential," "pursue," "outlook," "continue," "anticipate," "estimate," "expect," "project," "intend," "plan," "believe," "target," "forecast," and other words and terms of similar meaning. For example, statements regarding expectations about the hiring of a permanent President and Chief Executive Officer, the future results and benefits of announced initiatives and future financial results and operational plans are forward-looking statements. These forward-looking statements are subject to numerous risks and uncertainties, many of which are beyond the Company's control, which could cause actual benefits, results, effects and timing to differ materially from the results predicted or implied by the statements. Additional information concerning the risk factors faced by the Company is contained in SandRidge's public filings with the Securities and Exchange Commission (the "SEC"), which are available at the SEC's website, http://www.sec.gov. Each forward-looking statement speaks only as of the date of the particular statement, and SandRidge undertakes no obligation to publicly update any of these forward-looking statements to reflect events or circumstances that may arise after the date hereof.