

July 27, 2021

***Via E-mail*** (jfrates14@gmail.com, rcread@icmgi.com, JackLipinskiTX@gmail.com, PAgnello@sfire.com, jay@prodigypictures.com)
Board of Directors
SandRidge Energy, Inc.
1 E. Sheridan Ave., Suite 500
Oklahoma City, OK 73104

Re:   Dispute with SandRidge Energy, Inc. ("SandRidge") regarding Employment Contract of Carl Giesler, Jr.

Dear SandRidge Board of Directors:

Jean Frizzell and I represent SandRidge's former Chief Executive Officer, Carl Giesler, Jr., in the above-referenced matter. Please direct any future communications concerning this matter to our attention.

We direct your attention to Mr. Giesler's written employment contract with SandRidge (the "Employment Contract"). As you know, Sandridge and Mr. Giesler executed the Employment Contract on April 6, 2020, and SandRidge publicly filed the executed version as part of its 8-K on April 7, 2020.

Mr. Giesler honored the Employment Contract's terms. Unfortunately, to date, SandRidge has failed to do so. Per the Employment Contract, SandRidge owes Mr. Giesler approximately 284,323 Restricted Stock Units (the "RSUs"), which vested upon the July 16, 2021 termination of Mr. Giesler's employment.

SandRidge and Mr. Giesler negotiated the Employment Contract's terms, and they intentionally included the specific provisions appearing in the executed version. Its terms are clear. The plain language of Employment Contract §5 reads, in relevant part:

> [I]f Executive's employment is terminated after the Compensation Date but before the third Vest Date, (x) for any reason other than Cause (as defined in the Incentive Plan), an additional portion of the unvested Initial RSU Grant shall be vested, equal to the product of the number of the Initial RSU Grant shares that are not vested as

>of Executive's employment termination, multiplied by a fraction, the numerator of which is the number of days between the Effective Date and the date of Executive's employment termination, and the denominator of which is 1095 . . . .

The Employment Contract provides that its interpretation and enforcement shall be governed by Oklahoma law. Oklahoma law on contract interpretation is well settled. "Parties are at liberty to contract . . . to cover such risks as they see fit and they are bound by terms of the contract." *Porter v. Oklahoma Farm Bureau Mut. Ins. Co.*, 330 P.3d 511, 515 (Okla. 2014). "[C]ourts are not at liberty to rewrite the terms" of the parties' contract. *Id.* "In Oklahoma, the cardinal rule in contract interpretation is to determine and give effect to the intent of the parties." *Id.* Oklahoma courts "look to the plain and ordinary meaning" of the words the parties used "to determine and give effect to the parties' intent." *Id.*

By simply reading each sentence of Section 5 and applying the undisputed facts, the resulting calculation yields 284,323 RSUs owed to Mr. Giesler. Mr. Giesler's employment "terminated after the Compensation Date [June 15, 2020]" but "before the third Vest Date [April 6, 2023]." It terminated for a "reason other than Cause (as defined in the Incentive Plan [2016 Omnibus Incentive Plan (As Amended and Restated as of Aug. 8, 2018)])." Thus, "an additional portion of the unvested Initial RSU Grant [1,000,000 RSUs]" vested. That portion was "equal to the product of the number of the Initial RSU Grant shares that are not vested as of [Mr. Giesler's] employment termination [666,666.666 RSUs], multiplied by a fraction, the numerator of which is the number of days between the Effective Date and the date of [Mr. Giesler's] employment termination [467], and the denominator of which is 1095."

SandRidge has never claimed and could never legitimately claim that Giesler's employment terminated due to Cause. To the contrary, SandRidge has confirmed publicly that it did not terminate Mr. Giesler at all (much less for Cause) and that the termination of Mr. Giesler's employment was not the result of anything untoward:

July 27, 2021
Page 3

# SandRidge Energy, Inc. Announces Resignation of Carl Giesler and Appointment of Grayson Pranin to President and Chief Executive Officer



NEWS PROVIDED BY
**SandRidge Energy, Inc.** →
Jul 13, 2021, 16:29 ET

OKLAHOMA CITY, July 13, 2021 /PRNewswire/ -- SandRidge Energy, Inc. (the "Company" or "SandRidge") (NYSE: SD) today announced that Carl Giesler, Jr. has resigned as Chief Executive Officer, President and a member of the Board of Directors for the Company (the "Board") in order to pursue another career opportunity. Mr. Giesler's resignation will be effective July 16, 2021, ==and is not the result of any disagreement with the Company or any matter relating to the Company's operations, policies or practices.==

Similarly, SandRidge's prior course of performance under the Employment Contract confirms a straightforward textual reading of the Employment Contract's terms. For instance, during the 2020 compensation process (in spring 2021), SandRidge declined to grant Mr. Giesler further Long-Term Incentive RSUs, even thought it had granted them to other SandRidge senior executives, citing the specific terms of Mr. Giesler's Employment Contract, which did not expressly provide for such a grant. SandRidge also refused to pay Mr. Giesler for his work after the Employment Contract's Effective Date but before its Compensation Date, again acknowledging and relying upon a straightforward textual interpretation of the Employment Contract.

SandRidge's experienced human resource employees apparently agree with a plain reading of the Employment Contract. After the termination of Mr. Giesler's employment, SandRidge's human resources team – without any direct or indirect input or instruction from Mr. Giesler – drafted separation papers that included these vested RSUs because those experienced human resource professionals could independently read and execute the Employment Contract's plain language.

SandRidge owes Mr. Giesler the RSUs, but it apparently does not want to live with the deal the parties struck and Mr. Giesler performed. In this regard, I note that on July 21, 2021, SandRidge's current Chairman, Jonathan Frates, informed Mr. Giesler that SandRidge did not intend to

July 27, 2021
Page 4

distribute these vested RSUs to Mr. Giesler. Mr. Frates did not cite any contractual basis for SandRidge's refusal. Apparently, he has mentioned that doing so would not be "the Icahn way." While we respect Mr. Ichan's business success, we do not believe it grants him the power to rewrite or cause others to breach binding contracts. In fairness to SandRidge, we are not sure Mr. Icahn has the authority to control SandRidge's affairs in this manner. We are unaware of any public SandRidge filing in which Mr. Icahn is identified as having a specified position in the governance and management of the Company. Nonetheless, given what Mr. Giesler has been told thus far, we thought it was important to respond to this point.

In light of these circumstances, we respectfully request two things. Frist, we request that SandRidge, by August 6, 2021, confirm its intent to distribute to Mr. Giesler approximately 284,323 RSUs. Second, we request that Sandridge distribute the RSUs to Mr. Giesler as soon as practicable but in no event later than August 20, 2021.

If SandRidge would like to have its counsel discuss this matter further, we would be happy to do so. This is an avoidable dispute, and we hope that SandRidge sees it the same way.

Sincerely,

*Brandon T. Allen*

Brandon T. Allen

c:     Jean Frizzell (Firm)
Mr. Grayson Pranin, CEO, President and COO (gpranin@sandridgeenergy.com)
Mr. Salah Gamoudi, CFO, Senior Vice President (sgamoudi@sandridgeenergy.com)