## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

CARL GIESLER, JR.,                    )
                                      )
                Plaintiff,            )
                                      )
vs.                                   )          NO. CIV-21-0904-HE
                                      )
SANDRIDGE ENERGY, INC.,               )
                                      )
                Defendant.            )

### ORDER

Plaintiff Carl Giesler, Jr., is the former Chief Executive Officer of defendant Sandridge Energy Inc.  He was hired pursuant to an employment agreement which provided for, among other things, the award to him of restricted stock units ("RSU's") of defendant as specified in the agreement.  Those RSU's ultimately translated into stock in Sandridge.  Giesler resigned as CEO in July 2021.  By that time, he had been CEO for just over a year and had received RSU's attributable to the rights vested at the one year mark.[1] Plaintiff Giesler contends that, based on the terms of the employment agreement, he is entitled to additional RSU's for the additional time he spent as CEO, based on the formula in the agreement.[2]  Defendant Sandridge contends that, as plaintiff voluntarily resigned, he is not entitled to additional RSU's under the agreement.  Giesler asserts a single breach of contract claim arising out of the dispute.

---

[1] *The agreement provided for an award of 1,000,000 RSU's, vesting in three equal installments on each yearly anniversary of plaintiff's employment.  He received 333,333 RSU's at the end of the first year.*
[2] *He contends he is entitled to an additional 284,323 RSU's.*

Both parties have moved for summary judgment based on their respective views and constructions of the employment agreement.[3]   The execution of the employment agreement, its contents, and the operative facts underlying plaintiff's claim are undisputed. The principal contract provision at issue is as follows:

> 5.  <u>Long-Term Incentive Award</u>.  Effective as of the Effective Date, you will receive an award of 1,000,000 Restricted Stock Units (the "Initial RSU Grant") under the 2016 Omnibus Incentive Plan (As Amended and Restated as of August 8, 2018) (the "Incentive Plan").  This Initial RSU Grant will be subject to the terms and conditions of the Incentive Plan, and will (i) be settled in share of the Corporation's common stock upon vesting, and (ii) vest in three equal installments on each of the first, second, and third anniversaries of the Effective Date (the "Vesting Dates").  Notwithstanding the preceding sentence, if Executive's employment is terminated for any reason before the Compensation Date, Executive shall forfeit all of the Initial RSU Grant, and if Executive's employment is terminated after the Compensation Date but before the third Vesting Date, (x) for any reason other than Cause (as defined in the Incentive Plan), an additional portion of the unvested Initial RSU Grant shall be vested, equal to the product of the number of the Initial RSU Grant shares that are not vested as of Executive's employment termination, multiplied by a fraction, the numerator of which is the number of days between the Effective Date and the date of Executive's employment termination, and the denominator of which is 1095, and (y) for Cause, Executive shall forfeit all of the Initial RSU Grant, including any vested portion.

The dispute is over whether plaintiff's entitlement to additional shares under the agreement is precluded by his voluntary resignation.  More specifically, the question is

---

[3] *The parties' motions are for "partial" summary judgment.  Plaintiff acknowledges that certain defenses asserted by defendant remain unresolved even if the contract interpretation issue is resolved in plaintiff's favor.  It is unclear why defendant characterizes its motion as one for "partial" summary judgment.*

whether the phrase "employment is terminated" in the agreement refers only to an involuntary termination by Sandridge or whether it also includes plaintiff's voluntary resignation.

It is undisputed that Oklahoma law applies to the resolution of the contract dispute involved here.  Under Oklahoma law, the paramount objective of contract interpretation is to give effect to the intent of the parties as expressed in the contract.  Walker v. Builddirect.Com Techs. Inc., 349 P.3d 549, 552 (Okla. 2015).  In determining that intent, "[w]ords must be viewed in the context of the contract and must be given their plain ordinary meaning."  Logan Cnty. Conservation Dist. v. Pleasant Oaks Homeowners Ass'n., 374 P.3d 755, 762 (Okla. 2016) (quotations and citation omitted).  Where the contract is complete and unambiguous when viewed in its entirety, the court's obligation is to give effect to the intent of the parties as manifested in the agreement.  *Id.*

Both parties have ably argued their respective positions here.  However, applying the above principles in light of the entirety of the contract, the court concludes defendant's construction is consistent with the parties' manifest intention and that the contract provision and formula for additional RSU's does not apply where, as here, the "termination" was due to plaintiff's voluntary resignation.

It is true, as plaintiff argues, that the dictionary definitions of "termination" and "termination of employment" are broad enough to include termination of the employment relationship by either party, potentially including resignation by the employee.  *See* Black's Law Dictionary (11th ed. 2019).  However, in interpreting terms used in a contract, it is

not a matter of simply applying a dictionary definition.  Rather, the court must consider the contract as a whole in determining the parties' intentions.

Here, various provisions are inconsistent with the construction that plaintiff urges. As a threshold matter, his construction of the agreement is inconsistent with the overriding purpose of the stock award arrangement.  As the heading of paragraph 5 makes clear, the objective of the arrangement is for a "long term" incentive award.  Allowing plaintiff to receive a substantial award of additional stock in the circumstances here (i.e., a voluntary resignation relatively early in the employment relationship) is not consistent with that purpose.  Further, plaintiff's construction is largely, if not entirely, inconsistent with the agreement's provision for vesting of rights at annual intervals.  If he is entitled to the formula-driven award of additional shares in advance of the second and third vesting dates under the circumstance presented here, those vesting provisions then become largely surplusage.[4]  A court does not interpret contracts so as to render moot essential provisions or add language one party wishes it had included at the time of contract formation.  Claude C. Arnold Non-Operated Royalty Interest Props., L.L.C. v. Cabot Oil & Gas Corp., 485 P.3d 817, 822 (Okla. 2021).  Further, applying the contract formula which plaintiff relies on as the basis for an award would, in the present circumstances, work an anomalous result. As plaintiff essentially concedes (i.e., his reference to the "non-linear" nature of the formula recovery), requiring the award of additional shares now per the formula would result in plaintiff receiving 61.8% of the total available shares despite having worked only

---

[4] *The contract does permit an award of additional shares to plaintiff prior to the vesting date if Sandridge were to terminate his employment without cause.*

42.6% of the three-year period.   The incentives flowing from that result are plainly inconsistent with the parties' stated intentions as to the stock plan — to create an incentive for plaintiff to stay long term.[5]

In short, the agreement taken as a whole is inconsistent with the view that a "termination" based on plaintiff's voluntary resignation would trigger rights to additional RSU's.  The court therefore concludes that the agreement contemplates additional RSU's under the formula only where plaintiff's "termination" is other than a voluntary resignation.

Having concluded that defendant's construction of the employment agreement is the correct one, plaintiff's motion for partial summary judgment [Doc. #28] is **DENIED**. Defendant's motion for summary judgment [Doc. #34] is **GRANTED**.   Although defendant's motion is nominally described as one for "partial" summary judgment, granting the motion appears to resolve all issues as to plaintiff's basis for claim.  Judgment will therefore be entered separately in defendant's favor.

**IT IS SO ORDERED**.

Dated this 5th day of April, 2022.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[5] *The recognition, in the incorporated 2016 Omnibus Incentive Plan, of "resignation" as different from various forms of "termination" is also consistent with, though it does not compel, the court's conclusion here. Doc. #28-3, para. 6.4.*